|   |   |   |
|---|---|---|
| 1 | UNITED STATES DISTRICT COURT | |
| 2 | DISTRICT OF PUERTO RICO | |

3  LEONARDO CABRERA-MORALES,

4      Plaintiff,

                                                     Civil No. 09-2205 (JAF)

5      v.

6  UBS TRUST COMPANY OF PUERTO
7  RICO,

8      Defendant.

10  **OPINION AND ORDER**

11  Plaintiff brings this suit in diversity against Defendant, as trustee of the Leonardo

12  Cabrera Trust ("Trust"), for breach of fiduciary duty and of its duty of loyalty, in violation of

13  Puerto Rico tort and contract law, 31 L.P.R.A. §§ 3052, 5141–5142. (Docket No. 38.)

14  Defendant moves to dismiss for failure to join an indispensable party and, in the alternative, to

15  compel arbitration.[1] (Docket No. 26.) Plaintiff opposes (Docket Nos. 40; 60), and Defendant

16  responds (Docket Nos. 47; 68).

---

[1] Defendant does not invoke Federal Rule of Civil Procedure 12(b)(7) (Docket No. 26), but we construe the portion of this motion filed in lieu of a responsive pleading, advocating dismissal for failure to join a party required under Rule 19, as a motion under that rule. Although the First Circuit has not addressed the matter, we follow other circuits in determining that we may review documents outside the pleadings in considering a 12(b)(7) motion. See, e.g., 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1359 n.13 (3d ed. 2004) (citing Fifth, Eighth, Ninth, and Tenth Circuit precedent allowing review of extrinsic evidence).

# I.

# **Background**

On June 16, 2005, Plaintiff's brother César Benito Cabrera-Morales and his wife Helvetia del Carmen Barros-Vallés (together, "Founders of the Trust") constructed the Trust via public deed ("Deed"). (See Docket Nos. 35-1 at 1; 40 at 3.) They named Defendant as trustee (Docket No. 35-1 at 2, 11) and Plaintiff as beneficiary (id. at 3). The purpose of the Trust was to provide for Plaintiff's welfare, maintenance, and education, and for treatment of any of his illnesses. (Id. at 9.)

Defendant was charged with, inter alia, investing Trust assets. (See id. at 13, 16–18.) The Deed specified that investment of the assets was to be handled through the securities broker UBS Financial Services Incorporated of Puerto Rico ("UBS Financial") or through "any other securities broker that the Founders of the Trust indicate in writing." (Id. at 19.) The Deed absolved Defendant of responsibility for "any error committed by [inter alia, its financial advisors] when rendering their services to the Trust." (Id. at 24.) It also provided that Defendant would not be responsible for any "action or omission, except for its own voluntary carelessness or gross negligence." (Id. at 25.) Finally, the Deed stated that Defendant would not be liable for any loss of Trust assets. (Id. at 27.)

The Founders of the Trust initially deposited $250,000 into the Trust. (Docket No. 38 at 2.) In July 2005, Defendant executed an agreement ("Agreement") with UBS Financial establishing a brokerage account for managing the investment of Trust assets. (Docket No. 27-3.) The Agreement included a clause whereby Defendant and UBS Financial agreed to arbitrate any dispute arising out of the Agreement. (Id. at 6, 25.) Plaintiff alleges that Defendant then

Civil No. 09-2205 (JAF)                                                                                                  -3-

"directed [UBS Financial] to invest all of the $250,000.00 available in common stock of Bank of America Corporation." (Docket No. 38 at 3.) According to Plaintiff, the value of the Trust, which at one point reached $300,000, eventually dwindled to around $75,000 as a result of that risky investment. (Id. at 4.) Plaintiff also alleges that, responding to this drastic loss, he and the Founders of the Trust asked Defendant to initiate a legal action against UBS Financial, which Defendant failed to do. (Id. at 5–6.) This investment and subsequent failure to initiate legal action constitute, according to Plaintiff, Defendant's breach of fiduciary duty and of its duty of loyalty. (Id. at 6.)

On December 12, 2009, Plaintiff initiated this suit against Defendant, highlighting allegedly-negligent investment activity by both Defendant and UBS Financial, in violation of the Agreement. (See Docket No. 1.) Following the instant motion, Plaintiff amended his complaint to focus on Defendant's handling of the Trust and its assets. (See Docket No. 38.) Plaintiff requests compensation for economic damage to the Trust and for "mental, emotional, and physical" damages to Plaintiff, resulting from the Trust's inability to cover various of his essential expenses. (Id. at 6–8.)

## II.

### Arguments and Analysis

Defendant argues that UBS Financial is a required party under Federal Rule of Civil Procedure 19(a). (Docket No. 26.) It further argues that joinder of UBS Financial is not feasible because UBS Financial is likely to successfully compel arbitration of any claims brought against it in this court, which Defendant suggests is a winning objection to venue under Rule 19(a)(3). (Id.) Finally, Defendant argues that we should determine that this case cannot

proceed without UBS Financial, in accordance with Rule 19(b), and that, therefore, we should dismiss the action. (Id.)  In the alternative, Defendant argues, Plaintiff should be compelled to arbitrate under the Agreement, as Plaintiff has enjoyed direct benefits of the Agreement and is an intended third-party beneficiary of the Agreement. (Id.)  We consider each argument in turn.

### A.   Motion to Dismiss for Failure to Join a Required Party

Where a party required under Rule 19 has not been joined, a party may move for dismissal under Rule 12(b)(7). A determination as to whether dismissal is proper under Rule 19 proceeds in three steps: (1) assess whether the party is "required" under Rule 19(a)(1); (2) determine whether joinder is feasible; and (3) if joinder of a required party is not feasible, assess under Rule 19(b) whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed."[2]  The entire inquiry entails "pragmatic judgments," taking into account the "particular circumstances of the case." Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 14 (1st Cir. 2008) (quoting Pujol v. Shearson/Am. Express, Inc., 877 F.2d 132, 134 (1st Cir. 1989)).

A person is required under Rule 19(a)(1) if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double,

---

[2] At each step, we mind the "policies that underlie Rule 19, including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them." Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 16 (1st Cir. 2008) (internal quotation marks omitted).

    multiple, or otherwise inconsistent obligations because of the interest.

  Defendant argues that UBS Financial is a required party because, in essence, Plaintiff's claims center around UBS Financial's conduct. (See Docket Nos. 26; 47; 68.) According to Defendant, Plaintiff both implicitly alleges UBS Financial's wrongdoing—because he alleges Defendant failed to monitor bad investment decisions of its advisor—and seeks to enforce the Agreement.³ Since UBS Financial's conduct is at issue, Defendant argues, this court is likely to render a decision as to UBS Financial's negligence. If it is found negligent, UBS Financial will be prejudiced, both in potential subsequent settlements and in damage to its reputation. In addition, Plaintiff's claims arise out of the Agreement, and UBS Financial is required as a party to the Agreement.⁴

  We find that these arguments presuppose the erroneous assertion that the Agreement underlies Plaintiff's claims. Plaintiff's claims are based on an independent instrument: the Deed. (See Docket No. 38.) Plaintiff does not seek to enforce the Agreement, nor does he claim any right to enforce it. (Id.) He claims no rights under the Agreement. (Id.) Moreover,

---

 ³ Defendant also initially argued that Plaintiff explicitly alleged UBS Financial's negligent investment activity. (Docket No. 26.) As no such allegation appears in the controlling complaint (Docket No. 38), we deem this argument moot. See InterGen N.V. v. Grina, 344 F.3d 134, 145 (1st Cir. 2003) ("An amended complaint supersedes the original complaint, and facts that are neither repeated nor otherwise incorporated into the amended complaint no longer bind the pleader.") For the same reason, we deem moot Defendant's argument that Plaintiff did not claim Defendant's negligence as to the investment decisions made (Docket No. 26 at 11).

 ⁴ Defendant also argues that no relief is available to Plaintiff in UBS Financial's absence, as Plaintiff cannot recover against Defendant. (Docket No. 26.) Specifically, Defendant argues that (1) the Deed absolves it of liability for Plaintiff's claims and for the damages for which Plaintiff seeks recovery; and (2) the investment decisions were actually made by the Founders of the Trust. (Id.) Even if true, these arguments are irrelevant to the issue of whether UBS Financial, specifically, has an interest in this litigation.

we are doubtful that Plaintiff would have standing, under either the Deed or Puerto Rico trust law, to enforce the Agreement. Given that the instant suit centers around Defendant's conduct as trustee, and not around UBS Financial's investment conduct, we remain unconvinced that UBS Financial has any interest in this suit. We, therefore, find that UBS Financial is not a required party under Rule 19(a)(1).[5]

**B.     Motion to Compel Nonsignatory to Arbitrate**

A party moving to compel arbitration must show that the other party is bound by the arbitration clause at issue. InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Id. (quoting AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986)). The First Circuit has warned that "courts should be extremely cautious about forcing arbitration in situations in which the identity of the parties who have agreed to arbitrate is unclear." Id. at 143 (internal quotation marks omitted).

Defendant and UBS Financial stipulated that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, would govern the enforcement of their arbitration agreement. (See Docket No. 27-3 at 25.) Under the FAA, we follow the First Circuit in applying federal common law to evaluate Defendant's argument that a nonsignatory "can be bound by an arbitration provision in a contract executed solely by others." Intergen, 344 F.3d at 143. And, we note the First Circuit's reminder that federal common law incorporates general principles of contract law. Id. at 144.

---

[5] So finding, we need not proceed to consider Defendant's arguments as to the feasibility of joinder and the propriety of dismissal under Rule 19(b).

Defendant advances two theories, both discussed by the First Circuit in <u>Intergen</u>, to show that this case is an exception to the general rule that nonsignatories to an arbitration agreement cannot be bound by that agreement: equitable estoppel and third-party beneficiary.

### 1. **Equitable Estoppel**

"[A] party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him."[6] <u>Id.</u> at 145.

Defendant argues that Plaintiff actively exploited the Agreement. (Docket No. 26 at 17–21.) First, Plaintiff's status as trust beneficiary necessarily entails an exploitation of an agreement established to earn income for the Trust. Second, Plaintiff and the Founders of the Trust have repeatedly sought to hold UBS Financial to its performance under the Agreement—by urging Defendant to pursue legal recourse against UBS Financial and by incorporating complaints of UBS Financial's deficient performance into the instant suit.

We find that this alleged behavior, even if true, falls short of the behavior considered "exploitation" of an agreement in the equitable estoppel context. Every case Defendant cites to support this argument involved a plaintiff who had sued directly the investment company analogous to UBS Financial. The Fifth Circuit has explicitly held that "exploitation" is suit under the agreement. <u>Bridas S.A.P.I.C. v. Gov't of Turkmenistan</u>, 345 F.3d 347, 362 (5th Cir.

---

[6] Defendant points to Second Circuit precedent for the proposition that equitable estoppel also applies when the claims at issue are "intertwined" with the underlying agreement containing the arbitration clause. (Docket No. 26 at 17–18.) The First Circuit has already clarified, however, that courts have only held such intertwined claims to estop a <u>signatory</u> from avoiding an arbitration clause. See <u>Intergen</u>, 344 F.3d at 145–46; <u>see also</u> <u>Sourcing Unlimited, Inc. v. Asimco Int'l, Inc.</u>, 526 F.3d 38, 47 (1st Cir. 2008).

Civil No. 09-2205 (JAF) -8-

2003). Similarly, the Fourth Circuit held that estoppel applied when the nonsignatory's "entire case hinge[d] on its asserted rights under" the agreement containing the arbitration clause. Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000). We find, guided by these cases, that neither the passive benefit Plaintiff derived from the Agreement nor his indirect attempts to enforce it amount to "exploitation" necessary to trigger equitable estoppel. We, therefore, find that equitable estoppel does not operate here to hold Plaintiff to the arbitration agreement between Defendant and UBS Financial.

### 2. Third-Party Beneficiary

"[A] third-party beneficiary of a contract containing an arbitration clause can be subject to that clause and compelled to arbitrate on the demand of a signatory." Intergen, 344 F.3d at 146. A third-party beneficiary is one who has rights to enforce the promises made in the contract, such that he or she can sue for performance under the contract. See, e.g., 31 L.P.R.A. § 3374 (1990); County of Santa Clara v. Astra USA, Inc., 588 F.3d 1237, 1244–45 (9th Cir. 2009) (citing Restatement (Second) of Contracts § 304 (1981)).

Defendant here recycles earlier arguments in asserting that Plaintiff, as trust beneficiary, is clearly the intended third-party beneficiary of an agreement established to benefit the Trust. (Docket No. 26 at 22–23.) Defendant is misguided in relying on the third-party beneficiary doctrine for this purpose. Defendant has not established that Plaintiff is entitled to sue under the Agreement, nor does Plaintiff claim any such right. Plaintiff's relationship to the Agreement, then, is different from that of a third-party beneficiary to a contract. The difference is plain too from the fact that Plaintiff's ability to enforce the Deed and agreements related to it are governed by trust law, which limits Plaintiff's relationship beyond ordinary contract

Civil No. 09-2205 (JAF) -9-

principles. See 31 L.P.R.A. §§ 2541–2581 (1993). We, therefore, find that third-party beneficiary does not apply to this case and that Defendant cannot rely on it to hold Plaintiff to the arbitration agreement.

### III.

### Conclusion

Given the foregoing, we hereby **DENY** Defendant's motion to dismiss for failure to join an indispensable party and, in the alternative, to compel arbitration (Docket No. 26).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 20th day of January, 2011.

s/José Antonio Fusté
JOSE ANTONIO FUSTE
Chief U.S. District Judge